Argued December 17, modified December 31, 1914, rehearing denied
February 9, 1915.

## TILLOTSON v. PAQUET.

(145 Pac. 268.)

**Partnership—Accounting—Evidence.**

1.  In a suit for a partnership accounting, plaintiff was not charge-
able with one half the value of a pile-driver acquired by him, in the
absence of proof of its value and proof that he had acquired title
to it or still had it in his possession.

[As to actions between partners, see note in 12 Am. Dec. 649.]

**Partnership—Accounting—Mistake of Partner.**

2.  Where a partner makes a mistake in the payment of an account,
the loss is that of the firm.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE EAKIN.

This is a suit by J. B. Tillotson against Joseph
Paquet for an accounting.  During the years 1908 and
1909 plaintiff and defendant did some contract work
in partnership under a certain agreement, which is
stated by Paquet as follows:

"He [meaning Tillotson] told me he would look after
the work, and that all I would have to do was to fur-
nish the money, and he had an office here over town,
etc., and he said how, if I would look after the office,
and furnish the money, he would look after the work,
and we would divide the profits."

And apparently that is about the contract under
which they worked.  Tillotson attempted to keep a
book account of the transactions, but it proved to be
of no value when they attempted to settle.  Being
unable to satisfactorily adjust the differences between
themselves, Tillotson called in W. C. Walker, an ex-
pert bookkeeper, who attempted to make up the ac-
counts; and, not being able to come to an agreement
therefrom, this suit was commenced, resulting in a

judgment against Paquet for $1,000, from which he appealed.            MODIFIED.   REHEARING DENIED.

For appellant there was a brief with oral arguments by *Mr. Albert E. Gebhardt* and *Mr. Richard W. Montague.*

For respondent there was a brief over the name of *Messrs. Jeffrey & Lenon,* with an oral argument by *Mr. John A. Jeffrey.*

MR. JUSTICE EAKIN delivered the opinion of the court.

W. C. Walker testified that, Tillotson's books of accounts being unintelligible and of no aid to him, he called for Paquet's check and stub books, which Paquet turned over to him. It appears that all the expenditures were paid by Paquet by bank checks, and he received all the proceeds of the contracts, and plaintiff and defendant were both present with Walker when he made up his statements from the checks, which are in the record here as exhibits, showing the expenditures as to each particular contract separately, with the receipts on that particular contract. The list of checks is in typewriting. This method of making up the accounts seems to have been carried out on the understanding that Paquet received all the money on the contracts and paid by check all the moneys paid out. The evidence does not show the items of the account nor the particulars upon which Walker accounted. The first statement relates to the St. Johns dock contract, giving the amount and the payee named in each check, and the sum of the checks is $37,032.66, and the total amount received from said contract, as shown by said statement, is $37,435.78, showing the

profits to be $403.12. That is the only data we have
before us in regard to the expenditures and receipts
from that contract. The East Salmon and Third
Street contract is stated in the same way, showing a
profit of $1,099.54; the fish ladder contract, a profit of
$289.78; the Portland Heights contract, a profit of
$87.63; the Hawley Pulp & Paper Company contract,
a profit of $107.27; the Vancouver bridge contract, a
profit of $1,427.19; the Salem contract, a profit of
$218.30; the Northwest bridge work, a profit of $394.80;
the St. Johns Shipbuilding Company contract, a profit
of $836.98; the Country Club work, a loss of $859.27;
the Vancouver burnt bridge, a profit of $478.36; the
Northern Pacific trestle, a profit of $3,086.09. The
list of checks or receipts for the last two items does
not appear among the typewritten exhibits, and checks
and receipts for the Vancouver burnt bridge appear
only in pencil. There is no datum here from which
we can determine the accounts as to the contracts for
the two last items, but at the time the list of checks
found among the exhibits was made plaintiff and de-
fendant were present, and Walker testified that they
agreed to these results. There being no data from
which we can review the figures, evidently it is in-
tended that we shall determine the accounts from the
statements of Walker as to the profits on each con-
tract. Mr. Walker says that Paquet agreed to his
statement not only as to profits on each contract as
he states it, but that he agreed the balance found due
from him to Tillotson was the correct balance. We
do not so understand the result of the meeting, but only
that at the time of the accounting upon the separate
contracts he agreed to the amount of profits as there
stated. The items of the Northern Pacific trestle and
the Vancouver burnt bridge are included in nearly all

the statements, and neither of them is specifically controverted. We accept the statement marked "Plaintiff's Exhibit B" as the correct statement of profits of each contract therein mentioned, the total of which is $7,569.79.

1, 2. There are some other items about which there is a controversy. Tillotson contends that the partnership should allow him for the use of his engines $1,267.50, being at the rate of $2.50 a day; for rent of office, the hire of stenographers, his traveling expenses, and phone hire, $930.38; also pay for piling which he furnished in the East Salmon and Third Street contract, $278.59. Paquet contends that a pile-driver, valued at about $300, was left in the possession of the plaintiff by the Seattle Company, which he says plaintiff kept, and still has it in his possession, one half of the value of which he claims; but it is not shown that Tillotson got the title to it or what it is worth, nor that the partnership was entitled to it, and it cannot be considered here. Defendant also contends that a pile-driver hammer of his, worth $66, was lost in the work, for which he claims he is entitled to pay from the partnership. He claims that he is entitled to be remunerated by Tillotson for $40.20, costs advanced by him on a Seattle lawsuit, as the suit was Tillotson's private affair. He contends that, when the Country Club paid him for their work, they paid him in Country Club bonds $2,000, and he should have $151.65 interest for delay in payment, or for some other reason not made plain. If he took the bonds in payment at par, and there was a loss, it might be a partnership loss, but the $151.65 is claimed as interest, as though he had advanced the money for the bonds, and not as a discount on the bonds, and is not a proper charge. He also claims credit for $166, which

he alleges Walker, in making up the accounts, threw out, being money that he paid upon the Murphy bill; but it is not shown that he overpaid Murphy, and without such proof it was error for Walker to dis-allow such payment. If he made a mistake in the payment, the loss is the loss of the firm, and he is entitled to credit for the $166. The result of the statement as we have outlined above is as follows: J. B. Tillotson, in account with Joseph Paquet, profits on various jobs as follows: St. Johns dock, $403.12; East Salmon, $1,099.54; fish ladder, $289.78; Northern Pacific trestle, $3,086.09; Portland Heights, $87.63; Hawley Pulp & Paper Company, $107.27; Vancouver bridge, $1,427.19; Salem, $218.30; Northwest bridge work, $394.80; St. Johns Shipbuilding Company, $836.98; Vancouver burnt bridge, $478.36; total, $8,429.06. Deducting for the loss on Country Club of $859.27, there is left $7,-569.79. Paquet should be charged with one half the profits on the contracts, $3,784.90; one half the expense of Tillotson, $465.19, including office rent, stenographer fees, and phone bill; one half the amount of piling that Walker charged to Paquet, $139.29; one half of the bill for use of engine, $633.75; total, $5,023.12. Against which Paquet is entitled to credit for amount of advances made to Tillotson pending the contracts, $1,-972.55, as shown by the first page of typewritten statements; notes and interest due from Tillotson, $1,787.50; cash paid on the Seattle suit for Tillotson, $40.20; charged as overpayment, Murphy's bill, $166; one half the value of the pile-driver hammer, $33; one half of the amount of the Porter Bros.' bill $92.70; one half of the miscellaneous account, $55.40; total, $4,147.35. Deducting this from the $5,023.13, leaves a balance of $875.78.

The decree of the lower court will be modified to this extent. The partnership is hereby dissolved, and plaintiff is entitled to judgment and decree against the defendant, Joseph Paquet, for the sum of $875.78, being the balance due him on said accounting. Neither party shall recover costs in this court.

MODIFIED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.